UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
DOCKET NO. 3:18-cr-00202-MOC-DSC

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| | ) | |
| | ) | |
| Vs. | ) | ORDER |
| | ) | |
| **TONY BERNARD ALEXANDER,** | ) | |
| | ) | |
| Defendant. | ) | |

**THIS MATTER** is before the Court on defendant's *pro se* Motion to Suppress. Having considered defendant's *pro se* motion and reviewed the pleadings, the Court enters the following findings, conclusions, and Order.

## FINDINGS AND CONCLUSIONS

**I.**    **Background**

In the present motion, defendant challenges the search of an apartment by his federal probation officer, a location where he contends he did not reside. That search led to the discovery of a firearm, which probation attributed to defendant. Subsequent to United States Probation petitioning for a supervised release violation, the Grand Jury returned an Indictment charging defendant with possession of such firearm by a felon, 18 U.S.C. § 922(g). The Indictment also included charges of conspiracy to tamper with a witness, 18 U.S.C. §§ 1512(c)(2) and 1512(k), and of subornation of perjury, 18 U.S.C. § 1622, based on defendant's alleged actions in the underlying supervised release proceedings. Defendant has elected to represent himself in this matter. Court appointed stand-by counsel was present and rendered some assistance to defendant at the conclusion of the evidentiary hearing.

1

## II. Defendant's Motion to Suppress

In his motion, defendant contends that the search of a third-party's apartment, in which he contends he did not reside, violated the Fourth Amendment rights of the third-party. In response, the government argues that defendant lacks standing to challenge the search on behalf of the third-party. Alternatively, the government argues that even if he had standing, the motion is meritless inasmuch as the search was conducted pursuant to a search provision imposed as a condition of supervision by this Court.

While the government also argued that an evidentiary hearing was not necessary in light of the lack of standing and/or the warrant exception, the Court determined that an evidentiary hearing would be appropriate to provide the *pro se* defendant with an opportunity to flesh out the evidence and present his argument.

## III. The Evidentiary Hearing

The government called United States Probation Officer Jason Kemp. Officer Kemp testified that based on observations and information gathered from a number of sources, probation had determined that defendant, who was on intensive supervision, was not residing at the place he claimed. Instead of the location defendant reported, probation determined that defendant was residing at an apartment located at 6636 Idlewild Road in Charlotte, North Carolina. After conducting extensive surveillance, defendant was stopped in late 2017 as he attempted to enter the Idlewild Road apartment. He then handed over a set of keys that fit the car he used to come-and-go from the apartment as well as the door to the apartment.

Officer Kemp testified that before entering the apartment, other officers knocked on the door. When no one answered, the officers used defendant's key to gain entry and then, after gaining entry, announced "Police, Probation" search. He further testified that such entry and

announcement was all in accordance with established policies and practices of the United States Probation Office.

Officer Kemp testified that the subsequent search of the apartment led to the discovery of a number of personal items belonging to defendant. These items included mail addressed to defendant which was found in the living area and similarly addressed mail found in the master bedroom on a night stand or end table. That mail included letters from the Bureau of Prisons. A search of the walk-in-closet of the master bedroom revealed men's clothing in defendant's approximate size, as well as volumes of defendant's legal materials. Eventually, the search of the closet uncovered a box, which contained a garment bag, within which was found the gun upon which the supervised release violation and this action were brought. Packed with the gun, the officers found latex gloves. Officer Kemp testified that while no DNA was recovered from the firearm, defendant's DNA was found on or in the gloves.

**IV.     Standing**

To challenge a search and seizure, a party must have standing, which is obtained when a party shows that the search and seizure violated his personal Fourth Amendment right in the particular area searched. United States v. Davis, 430 F.3d 345, 359–60 (6th Cir. 2005); United States v. Avent, 162 F.3d 1156 (4th Cir. 1998). Mere ownership or possession of an item seized is insufficient in itself to establish a right to a legitimate expectation of privacy in the particular area searched. United States v. Manbeck, 744 F.2d 360, 374 (4th Cir. 1984). Defendant's undisputed disclaimer of residency in the Idlewild Road apartment negates the existence of any protectable privacy interest in the search of those premises. United States v. Washington, 677 F.2d 394, 396 (4th Cir. 1982).

In considering whether a legitimate expectation of privacy has been shown, courts consider: (1) whether the defendant has manifested a subjective expectation of privacy in the particular area searched; and (2) whether society is prepared to recognize this expectation of privacy as objectively reasonable. California v. Greenwood, 486 U.S. 35, 39 (1988). The burden of establishing these factors is on the defendant. Rakas v. Illinois, 439 U.S. 128, 134 (1978).

The fact that it was determined that the gun, clothes, mail, and legal papers belonged to defendant is of no moment as his denial of ownership denies him standing to challenge the search. Washington, 677 F.2d at 396. Further, defendant lacks standing to assert the Fourth Amendment rights of the lessee of the apartment, regardless of the relationship he may have with her. The protections of the Fourth Amendment are personal and cannot be vicariously asserted. See United States v. Salvucci, 448 U.S. 83, 87 (1980) ("it is proper to permit only defendants whose Fourth Amendment rights have been violated to benefit from the [exclusionary] rule's protections.") (citation omitted). The Supreme Court has repeatedly disallowed the vicarious assertion of another's Fourth Amendment protections. Id. at 86 ("Subsequent attempts to vicariously assert violations of the Fourth Amendment rights of others have been repeatedly rejected by this Court.") (citations omitted).

Accordingly, defendant has no standing to challenge the alleged violation of *another defendant*'s Fourth Amendment rights. The Motion to Suppress is, therefore, denied for lack of standing.

V.  **Substantive Review of the Search**

Even if the Court were to assume that defendant had standing, the Motion to Suppress would fail because the probation officers were authorized by this Court, through the conditions of supervision, to search the premises of wherever defendant resided or wherever they reasonably

suspected he resided. This Court's Judgments from March 10, 1997 (Judgment (#304), upon conviction and sentencing) and March 3, 2016 (Judgment (#606), upon conviction and sentencing for previous violation of conditions of release) in United States v. Alexander, 3:95cr178, provide as follows:

> The defendant shall submit his person, residence, office, or vehicle … to a search, from time to time, conducted by any U.S. Probation Officer and such other law enforcement personnel as the probation officer may deem advisable, without a warrant. … The defendant shall warn other residents or occupants that such premises or vehicle may be subject to searches pursuant to this condition.

Id. at ¶ 17.

As an exception to the warrant requirement of the Fourth Amendment, probation officers and those officers that assist them may conduct warrantless searches of persons and their residences under supervision, be they probationers or parolees. United States v. Knights, 534 U.S. 112 (2001); Sampson v. California, 547 U.S. 843, 850-56 (2006) (suspicionless search appropriate for a parolee); United States v. Midgette, 478 F.3d 616 (4th Cir. 2007); United States v. Pickens, 295 Fed. Appx. 556 (4th Cir. Oct. 6, 2008) (unpublished).

Probable cause is not required to search the residence of a person on supervised release. Knights, 534 U.S. 120-21. Rather, in determining whether a particular search is an appropriate intrusion on a supervisee's diminished expectation of privacy, a probation officer need only articulate a reasonable suspicion for conducting the search. See Knights, 534 U.S. at 121–22 ("When an officer has reasonable suspicion that a probationer subject to a search condition is engaged in criminal activity, there is enough likelihood that criminal conduct is occurring that an intrusion on the probationer's significantly diminished privacy interests is reasonable.").

At the hearing, Officer Kemp provided ample, credible testimony as to why defendant's supervising officers suspected that defendant had falsely claimed he was residing at a residence

other than the Idlewild Road apartment. That testimony revealed that prior to conducting the search, they conducted an extensive investigation concerning his whereabouts, discovered that defendant had lied to them about his residence, and determined that he had attempted to obfuscate his means of arrival at a meeting by hiding the car which probation had observed leaving the Idlewild Road apartment after calling him to meet. Further, probation discovered that defendant had used the Idlewild Road apartment address in a manner that associated him with that residence in a person-locator report (Accurint), and that when they confronted him as he was attempting to return to the apartment, he had a key to the apartment on his person. Further, probation was aware that defendant was, by his own admission and through screenings, using marijuana and attempting to dilute urinalysis results while on supervision, which is a violation of the conditions of release. Thus, probation had reason to believe that the unreported residence was not only in and of itself a violation of the conditions of release, but have been undisclosed to further other conduct violative of his conditions.

Based on a totality of the circumstances disclosed by Officer Kemp's testimony, probation had reason to believe that the Idlewild Road apartment was actually defendant's undisclosed residence and was being used to facilitate violations of his conditions of release. Thus, when the defendant's diminished expectation of privacy as a supervisee is considered alongside the conditions of supervision imposed by this Court and the reasons that prompted the officers to enter the Idlewild Road apartment, the search of the residence did not violate any protection afforded defendant under the Fourth Amendment.

## VI.    Knock and Announce

Defendant argued at the conclusion of the hearing that he believed the search of the apartment violated the Fourth Amendment because the officers did not announce who they were

until after they knocked and unlocked the door. The requirement that officers knock and announce before entering to conduct a search is incorporated in the Fourth Amendment and codified in 18 U.S.C. § 3109. See United States v. Dunnock, 295 F.3d 431, 434 (4th Cir. 2002). Missing from defendant's understanding of the knock and announce requirement is that it only comes into play where officers gain entry to a residence by force, Richards v. Wisconsin, 520 U.S. 385 (1997), rather as was accomplished here with the use of a key provided by defendant.

The knock and announce requirement generally requires that before entering a dwelling, police must knock on the door and announce their identity and purpose for entry before attempting forcible entry. United States v. Grogins, 163 F.3d 795, 797 (4th Cir. 1998). However, as found in Dunnock, supra, "it is entirely reasonable to conclude [that defendant] … by virtue of the fact he was standing outside his home in the presence of police as they were about to execute a valid search warrant, had all the benefits of the protections afforded by the knock and announce rule of § 3109." Id. at 435. In this cas, the undisputed testimony is that the officers first knocked on the door and when no one answered, they gained entry by using the key defendant had just turned over to them. Once the door was peaceably open, the officers announced their presence and purpose before making further entry.

Thus, neither the protections afforded by the Fourth Amendment nor § 3109 come into play because entry was not gained by force, but with a key supplied by defendant in conjunction with a search that s otherwise exempt from the Fourth Amendment's warrant requirement. Further, as in Dunnock, defendant was present outside the apartment immediately before entry was made, and thus had "all the benefits of the protections afforded by the knock and announce rule of § 3109." Id.

## VII. Pro Se Status

Finally, the Court believes it is appropriate to revisit defendant's *pro se* status in light of his handling of the suppression hearing. As demonstrated at the hearing, defendant lacks the training and experience necessary to differentiate between asking a question and making a statement, a fundamental trial skill. As he was advised at the hearing, if defendant elects to go to trial without counsel, he will not be allowed to make statements from counsel table in examining or cross-examining witnesses. Further, if he strays and makes legal arguments or conclusions to the jury when questioning witnesses, the Court will be compelled to provide the jury with appropriate corrective instructions.

The right of self-representation is not, however, contingent on the complexity of the action or how well a defendant represents himself. While defendant is obviously an intelligent person not suffering from any mental defect that would prevent him from representing himself or assisting in his own defense, defendant lacks the professional experience and the judgment that comes with experience to *effectively* represent himself. The Court is mindful, however, that "the competence that is required of a defendant seeking to waive his right to counsel is the competence to waive the right, not the competence to represent himself." Godinez v. Moran, 509 U.S. 389, 399 (1993). Where a defendant is not suffering from a mental illness that impairs his ability to conduct trial proceedings, his "ability to represent himself has no bearing upon his competence to choose self-representation." Id. at 400.

The Court points out defendant's struggles at the evidentiary hearing not to be critical of either his performance or his choice to represent himself, but to remind him that he may assert his right to counsel at any time if he believes the task he has taken on is too complex. See United States v. Roof, 225 F. Supp. 3d 394, 400 (D.S.C. 2016). As discussed above, while defendant

8

clearly grasps fundamental legal concepts such as the protections afforded by the Fourth Amendment, he has difficulty applying those concepts to the facts of his case. Defendant is reminded that that even lawyers who find themselves as defendants in criminal cases most always elect representation by counsel, because attorneys recognize that it is hard for anyone to effectively represent themselves as they are too close to their own positions to see the other side.

Stand-by counsel drawn by defendant is a well-qualified trial lawyer, has tried a number of serious trials in this court and assisted in reaching other resolutions, and the Court is confident in his ability to assist defendant in this matter if defendant so elects.

**ORDER**

**IT IS, THEREFORE, ORDERED** that defendant's pro se Motion to Suppress (#27) is **DENIED**.

Signed: August 28, 2018

Max O. Cogburn Jr
United States District Judge